IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SCOTTSDALE INSURANCE )
COMPANY, )
 )
     Plaintiff, )
 )
v. )     CASE NO. 2:11-cv-0668-MEF
 )     (WO – Do Not Publish)
ALABAMA MUNICIPAL INSURANCE )
COMPANY, )
 )
     Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alabama Municipal Insurance Corporation's Motion

for Judgment on the Pleadings (Doc. # 8). Also pending before the Court is Plaintiff's Cross

Motion for Summary Judgment (Doc. # 14) and Defendant's Motion for Leave to File a

Surreply Brief in support of its Motion for Judgment on the Pleadings and in opposition to

Plaintiff's Motion for Summary Judgment. (Doc. # 22.) For the reasons set forth below, it is

hereby ORDERED that the Motion for Judgment on the Pleadings (Doc. # 8) is DENIED.

It is further ORDERED that Defendant's Motion for Leave to File a Surreply Brief (Doc.

#22) is DENIED as MOOT, and that Plaintiff's Motion for Summary Judgment (Doc. #14)

is DENIED with leave to refile.

### I. JURISDICTION AND VENUE

Jurisdiction in this action is predicated on 28 U.S.C. § 1332.  Plaintiff Scottsdale

Insurance Company ("Scottsdale") is organized, incorporated, and existing under the laws

of Ohio. Defendant Alabama Municipal Insurance Corporation ("AMIC") is an Alabama

corporation with its principal place of business in Montgomery, Alabama. Based on these

allegations, the Court finds that the plaintiff and the defendant are citizens, for purposes of 28 U.S.C. § 1332, of different states. Because it is also alleged that more than $75,000 is at controversy in this case, the Court is satisfied that this additional requirement for diversity jurisdiction pursuant to 28 U.S.C. § 1332 is met. No party has made personal jurisdiction an issue in this matter. Furthermore, the Court is satisfied that venue is appropriate pursuant to 28 U.S.C. § 1391(a)(2).

## II. FACTUAL BACKGROUND

AMIC purchased a professional liability insurance policy from Scottsdale for a period beginning on December 6, 2010, and ending on December 6, 2011. (Compl. ¶ 5 (Doc. # 1).) Prior to purchasing its policy with Scottsdale, AMIC defended one of its insureds, the Town of Woodland ("Woodland"), in two Georgia state court lawsuits. (*Id.* at ¶ 13.)

The claims in these underlying lawsuits against Woodland arose from a single-car accident that occurred on November 24, 2009, in Troup County, Georgia, while Billie Vernon Edmondson was driving a van on behalf of Woodland. (*Id.* at ¶¶ 9–10.) The accident resulted in serious injury to one of the passengers, Connie Meadows, and the death of the other passenger, Jeannette Holloway (*Id.* at ¶¶ 10–11), who are hereinafter referred to as the "underlying plaintiffs." AMIC provided a defense to Woodland and Edmondson in the Georgia state lawsuits. (*Id.* at ¶ 13.)

Following a jury trial, the Superior Court of Troup County, Georgia entered final judgment in favor of Holloway and Meadows and against Woodland and Edmondson in the amount of nearly $4,000,000. (*Id.* at ¶¶ 14–15.) The liability limit of the Woodland's policy with AMIC was $2,000,000 per occurrence. (*Id.* at ¶ 12.) AMIC filed notices of appeal with

the Georgia Court of Appeals on the judgments entered against it.  (*Id.* at ¶ 17.) On January 7, 2011, AMIC also filed a separate declaratory judgment action in Alabama state court, arguing that its liability to the underlying plaintiffs was limited to $100,000 per plaintiff under the Alabama statutory caps on damages against government entities contained in the Alabama Code §§ 11-93-2 and 11-47-190 (1975). (*Id.* at ¶ 19.)

On January 24, 2011, the underlying plaintiffs filed suit against AMIC, alleging that AMIC was liable to them for its bad faith failure to settle their claims within the policy limit. (Compl. ¶ 21; Def.'s Countercl. ¶ 7 (Doc. # 6).) AMIC tendered the defense of this "Bad Faith Lawsuit" to Scottsdale. (Compl. ¶ 22.) Scottsdale defended AMIC but took the position that AMIC's liability to the underlying plaintiffs was not covered by its policy with AMIC. (*Id.* at ¶ 33.) On July 5, 2011, just nine days before oral argument before the Georgia Court of Appeals, the underlying plaintiffs offered to settle their claims against AMIC and the other defendants for AMIC's policy limit of $2,000,000 plus interest, with the condition that the offer would be withdrawn if it was not accepted before the oral argument on July 14, 2011. (*Id.* at ¶¶ 26–27.) Scottsdale recommended that AMIC settle the claims under the underlying plaintiff's offer and warned AMIC that it would invoke the "hammer clause" in its policy with AMIC and cease defending AMIC if AMIC refused to settle.  (Def.'s Countercl. ¶ 20.) The hammer clause provided in relevant part:

> If an INSURED shall refuse to consent to any settlement or compromise
> recommended by the Insurer and acceptable to the claimant and shall further
> elect to contest the CLAIM, the Insurer's liability shall not exceed the amount
> for which the Insurer would have been liable . . . at the time the CLAIM could

have been settled or compromised. Should the INSURED refuse consent for

such recommended settlement the insurer may withdraw from the defense of

the CLAIM.

(Scottsdale Policy, at § 1.C. (Attach. to Doc. # 1 as Pl.'s Ex. A).) Scottsdale alleges in its

Complaint that the parties agreed to fund a settlement with the underlying plaintiffs of

$2,000,000 in the following way: AMIC would fund the first $200,000 of the settlement, and

the two companies would split the remaining $1,800,000 evenly between them, each

reserving the right to seek reimbursement from the other.  (Compl. ¶ 34.) Scottsdale's policy

with AMIC also included a provision that allowed Scottsdale to seek reimbursement for any

claim expense it paid in the event that it is determined by a judgment, a settlement, or a

decision of an arbitrator that the policy provided no coverage for the claim paid.  (*Id.* at ¶¶

43–44; Scottsdale Policy, at § IV.P.) While AMIC denies that there was any such agreement

between the parties to split the cost of settlement and litigate the reimbursement issue later

(Ans. ¶ 34 (Doc. # 6)), it is undisputed that AMIC paid $1,100,000 toward the settlement and

that Scottsdale paid $900,000 toward the settlement. (Compl. ¶¶ 36–37.) The claims against

AMIC were settled on August 3, 2011. (*Id.* at ¶ 39.)

On August 18, 2011, a little more than two weeks after the claims in the underlying

litigation were settled, Scottsdale filed suit against AMIC in this Court seeking a declaratory

judgment on the following issues: (1) that Scottsdale had no duty to indemnify AMIC in the

underlying litigation, including the Bad Faith Lawsuit, and thus, it had no duty to pay any

portion of the settlement of those claims; and (2) that it is entitled to reimbursement of the

$900,000 it paid toward the settlement of the underlying litigation plus interest, costs, and

legal fees. After the pleadings were closed, AMIC filed the present Motion for Judgment on the Pleadings, in which AMIC argues that Alabama's common law voluntary payment doctrine bars Scottsdale from seeking a declaratory judgment that it is entitled to reimbursement of the money it paid toward the settlement. Scottsdale responded to AMIC's motion and simultaneously moved for summary judgment. (*See* Doc. # 14.)

## IV. LEGAL STANDARD

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, AMIC's motion for judgment on the pleadings requests dismissal of Scottsdale's complaint. In deciding a Rule 12(c) motion for judgment on the pleadings, a court may consider only the pleadings, in this case Scottsdale's Complaint, AMIC's Answer and Counterclaims, and Scottsdale's Answer to AMIC's Counterclaims. *See* Fed. R. Civ. P. 12(c). Documents attached to the pleadings become part of the pleadings and may be considered on a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 10(c). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). The main difference between the motions is that a motion for judgment on the pleadings is made after an answer and that answer may also be considered in deciding the motion. "[T]he fact allegations of the complaint are to be taken as true, but those of the answer are taken as true only where and to the extent that they have not been denied or do not conflict with those of the complaint." *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956)[1]; *Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir.), *cert. denied*, 338 U.S. 816 (1949). In order to prevail, a motion for judgment on the pleadings "must be based on the undisputed facts appearing in all the

---

[1]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

pleadings." *Stanton*, 239 F.2d at 106. Furthermore, the court is obliged to scrutinize the complaint, construed in the plaintiff's favor, and to allow it to stand if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Mergens v. Dreyfoos,* 166 F.3d 1114, 1116-17 (11th Cir. 1999).

## V. DISCUSSION

### A.   AMIC's Motion for Judgment on the Pleadings

AMIC argues that despite what AMIC's policy with Scottsdale provided or what agreements the parties entered into with regard to funding the settlement, Scottsdale is barred from seeking reimbursement of the money it paid toward the settlement as a matter of law. Invoking Alabama's common law voluntary payment doctrine, AMIC argues that Scottsdale's settlement payment was voluntary, and thus, Scottsdale may not recover that payment from AMIC. Scottsdale argues in response that its settlement payment was not "voluntary" within the meaning of doctrine, because the parties had agreed to litigate the right to be reimbursed for their respective payments. Thus, Scottsdale argues, the voluntary payment doctrine does not bar its right to seek reimbursement. After a careful review of the pleadings, the briefs of both parties, and the relevant state law under the narrow standard applicable to the present motion, the Court concludes that the voluntary payment doctrine does not clearly bar Scottsdale's claims.

### 1.   *Applicable Law*

As previously noted, this Court may entertain this case because it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  That being the case, the Court must apply state substantive law and federal procedural law.  The parties assume without explaining why Alabama law applies in this case.  Having considered the nature of the issues and conducted the appropriate choice of law analysis, the Court agrees that Alabama law applies.

In support of its motion, AMIC relies heavily on the case of *Mt. Airy Insurance Co. v. Doe Law Firm*, 668 So.2d 534 (Ala. 1995), in which Alabama Supreme Court described the long-standing voluntary payment doctrine as follows:

> "[W]here one party, with full knowledge of all the facts, voluntarily pays money to satisfy a colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion."

*Id.* at 537 (citation and internal quotation marks omitted).[2]

In that case, a law firm faced with a potential malpractice claim demanded that its professional liability insurer, Mt. Airy, settle the claim against it.  *Id.* at 536.  When Mt. Airy received notice of the malpractice claim, it filed a declaratory judgment action in federal court seeking a judicial determination on whether the potential claim against the law firm was covered under the insurance policy.  *Id.* at 535–36.  Mt. Airy agreed to pay on the

---

[2]AMIC also cites two other Alabama Supreme Court cases that it contends further support its position: *U-Haul Co. of Ala. v. Johnson*, 893 So.2d 307, 311 (Ala. 2004), and *Stone v. Mellon Mortg. Co.*, 771 So.2d 451, 456 (Ala. 2000) (AMIC's Reply 6–7 (Doc. # 20).) In neither of these cases, however, was there an agreement in advance that a suit would for reimbursement would follow the payments. AMIC merely cites them to restate the general rule on voluntary payments. Thus, the Court concludes these authorities do not add anything to AMIC's position or this Court's analysis.

condition that the law firm agree that its payment of the settlement amount would not constitute a waiver of Mt. Airy's right to seek reimbursement from the firm if it prevailed in its pending federal declaratory judgment action. *Id.* at 536. Even though the firm refused the non-waiver agreement, Mt. Airy paid the settlement amount under protest. *Id.*

The *Mt. Airy* court concluded that the insurer was not entitled to reimbursement because the payment was voluntary. *Id.* at 539. In so concluding, the court distinguished a line of California cases relied upon by Mt. Airy, in which the courts required an insurer to preserve its right to reimbursement by either entering a written agreement with its insured that it did not waive its right to reimbursement or by obtaining a court order granting the insurer permission to participate in the settlement while reserving its right to reimbursement. *Id.* at 538. The *Mt. Airy* court treated as material the fact that the law firm had explicitly refused to enter into the non-waiver agreement with Mt. Airy. *Id.*

In arguing that *Mt. Airy* does not apply to this case, Scottsdale directs the Court to a much earlier Alabama Supreme Court case applying the voluntary payment doctrine. In *Smith v. Baldwin*, 187 So. 192 (1939), the court stated the general rule that "a payment which is voluntary and unconditional, though under alleged protest, cannot be recovered." *Id.* at 194 (citing *Bailey v. Minge*, 77 So. 419 (Ala. App. 1917)). However, the *Smith* court also acknowledged an exception[3] to this general rule: "[W]hen there is a controversy between

---

[3] AMIC argues that the exception articulated in *Smith* applies only in cases involving payments between two parties--a payor and a payee--rather than cases like the one at bar in which payments were made to a third party. (AMIC's Reply 5 (Doc. # 20).) AMIC bases its narrow interpretation of *Smith*'s holding solely on one Alabama decision's description of the holding. *See Workers Comp. Self Ins. Fund v. Williams*, 982 So.2d 557, 564 (Ala. Civ. App. 2007) (stating that the *Smith* exception applies when a controversy over payment exists "between a payor and payee"). The Court is not persuaded that the *Smith* exception is so limited. *See Smith*, 187 So. at 194 (acknowledging that the exception applies "when there is a controversy *between persons* . . . ." (emphasis added)).

persons and money is paid in protest of its correctness and with the assurance of a suit for the recovery of all or a part of it, and that situation is assented to, the amount is thereby left open to be adjudicated and is not a voluntary payment." *Id.* at 194.

In *Smith*, the plaintiff, who was trying to obtain a loan on his land, paid under protest the defendant's claim for payment for drilling a well on the plaintiff's land. *Id.* at 193. The plaintiff made this payment in order to free his land of any liens. *Id.* The court noted that there was evidence the defendant assented to the plaintiff's intent to seek reimbursement from the defendant for the disputed amount of the bill. *Id.* In light of this evidence and based on the principle that an agreement between the parties to litigate for recovery of money paid in protest renders such payment involuntary, the court concluded that plaintiff had properly reserved his right to seek reimbursement. *Id.* at 194.

### 2. *The Voluntary Payments Doctrine Does Not Bar Scottsdale's Claims*

Applying the foregoing law to the facts of this case, the Court concludes that Scottsdale's complaint plausibly states a claim under the exception to the general bar to recovery of voluntary payments applied in *Smith v. Baldwin*. Thus, Scottsdale's claims are not barred by the voluntary payments doctrine for the purposes of AMIC's motion for judgment on the pleadings.  Applying the *Smith* exception, there is a disputed issue of material fact that is evident from the pleadings—whether the parties *agreed* to split the cost of settling the claims in the underlying lawsuits "in order to avoid the expense, risk, and uncertainty of ongoing litigation" (Compl. ¶ 34) and to reserve their respective rights to recover their settlement costs from each other after the claims were settled.  Because a motion for judgment on the pleadings may only be granted if the material facts are not disputed, AMIC's motion for judgment on the pleadings must be denied.

9

In the present case, Scottsdale alleges, and AMIC disputes, that the parties agreed to fund the settlement and later litigate their respective claims for reimbursement. (Compl. ¶ 34; Ans. ¶ 34.)  Additionally, the insurance policy Scottsdale issued to AMIC provided that Scottsdale would have the right to seek reimbursement for any claim expense later determined to be excluded from the policy's coverage. (Compl. ¶ 43.)  The presence of these facts, which the Court is bound to take as true in ruling on a motion for judgment on the pleadings, *Stanton*, 239 F.2d at 106, significantly distinguishes this case from *Mt. Airy*, where there was no agreement between the parties, *id.* at 538, and the court made no mention of a reimbursement provision contained in the insurance policy.

Scottsdale's allegations are very similar, however, to the facts set forth in *Smith*, in which the defendant assented to later litigation of the plaintiff's claims for reimbursement. *Smith*, 187 So. at 193. In light of the exception to the general bar to recovery of voluntary payments, which was articulated and applied in *Smith*, *id.* at 194, and which the *Mt. Airy* court referenced—albeit in the context of analyzing a California case setting forth the same exception, *Mt. Airy*, 668 So.2d at 538—the Court concludes that the exception, not the general rule, governs this case.

Scottsdale's complaint states a plausible claim under the *Smith* exception, and an element of that exception—the existence of an agreement between the parties—is disputed by the parties.  Thus, the Court concludes that AMIC's motion for judgment on the pleadings is due to be denied.  In deciding a motion for judgment on the pleadings, it is the obligation of this Court to take as true the fact allegations contained in Scottsdale's complaint, including the existence of an agreement.  Indeed, the only thing that the parties seem able to agree upon is that there is a dispute as to the existence of an agreement. Because this material fact—the

existence of an agreement—is disputed by the parties, AMIC's motion for judgment on the pleadings cannot prevail and must be denied.

**B.    Scottsdale's Motion for Summary Judgment**

AMIC argues that Scottsdale's motion for summary judgment should be denied as premature. (AMIC's Reply 8 (Doc. # 20).) This Court agrees.

Summary judgment is appropriate when

[a] party asserting that a fact cannot be or is genuinely disputed . . . support[s] the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)–(B). The Supreme Court has held that "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" but only "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is well established in the Eleventh Circuit that "summary judgment may only be decided upon an adequate record." *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988). The Eleventh Circuit has stated that the law in this jurisdiction is clear that "the party opposing a motion for summary judgment should be

permitted an adequate opportunity to complete discovery prior to consideration of the motion." *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997). Because the parties in this case have not yet begun discovery, the Court finds that Scottsdale's motion for summary judgment is due to be denied with leave to refile to allow AMIC to develop an adequate record.

## VI. Conclusion

In light of the foregoing, it is hereby ORDERED that:

     (1)     AMIC's Motion for Judgment on the Pleadings (Doc. # 8) is DENIED;

     (2)     AMIC's Motion for Leave to File Surreply (Doc. # 22) is DENIED as MOOT; and

     (3)     Scottsdale's Motion for Summary Judgment (Doc. # 14) is DENIED with leave to refile.

DONE this the 28th day of September, 2012.

                                    /s/ Mark E. Fuller     
                              UNITED STATES DISTRICT JUDGE